IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNDERSEA RECOVERY CORPORATION, | ) | |
| | ) | Civil Action No. ____________ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAMON AGUSTIN MADERO DAVILA, GALO HANS TEJEDA JOSEPH, | ) ) | |
| | ) | |
| Defendants. | | |

**VERIFIED COMPLAINT**

Plaintiff UnderSea Recovery Corporation files this Complaint against Defendants Ramon Agustin Madero Davila and Galo Hans Tejeda Joseph (collectively, "Defendants") and alleges as follows.

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff UnderSea Recovery Corporation ("UnderSea") is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Atlanta, Georgia. UnderSea is in the business of pursuing archaeologically guided exploration and recovery of shipwrecks throughout the world.

2. Defendant Ramon Agustin Madero Davila ("Madero") is an individual who is a citizen and subject of the United Mexican States. His Mexican passport, number P *******3351, states his nationality as "MEXICANA," and his place of birth as Saltillo, Coahuila.

3. On January 16, 2014, Madero transmitted his Mexican passport, Mexican driver's license, and Mexican voter identification (INE) by email to UnderSea. At the time, Madero was domiciled in Mexico City, Mexico.

4. At all relevant times, Madero was President, Chief Executive Officer, and sole administrator of Madero Holding, S.A. de C.V. ("Madero Holding"), a Mexican corporation.

5. Defendant Galo Hans Tejeda Joseph ("Tejeda") is an individual and a citizen and subject of Mexico. Records identify Tejeda as based in Mexico City. On information and belief, Tejeda is Defendant Madero's brother-in-law.

6. Madero is a citizen or subject of a foreign state within the meaning of 28 U.S.C. § 1332(a)(2).

7. Tejeda is a citizen or subject of Mexico within the meaning of 28 U.S.C. § 1332(a)(2).

8. Neither Madero nor Tejeda is a foreign citizen lawfully admitted for permanent residence in the United States and domiciled in the same State as UnderSea.

9. The amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a)(2), which confers jurisdiction over civil actions between citizens of

a State and citizens or subjects of a foreign state where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District. Madero caused his representative and agent Tejeda to travel to and meet with UnderSea in Atlanta, Georgia to perform due diligence and to discuss the investment, and caused documents and written assurances to be sent into Georgia, including the ownership records and repeated assurances of performance directed to UnderSea's principal, Herbert Leeming, in Georgia.

12. Tejeda personally entered Georgia and participated in the Atlanta due-diligence meeting and related discussions as Madero's agent.

13. This Court may exercise personal jurisdiction over Tejeda because he personally entered Georgia and participated in the January 14, 2013 Atlanta due-diligence meeting on Madero Holding's behalf. Tejeda purposefully availed himself of the privilege of conducting activities in Georgia by traveling to Atlanta, meeting with UnderSea, and participating in due diligence and discussions concerning the investment. Tejeda's Georgia conduct and subsequent communications with UnderSea arise from the same forum-related conduct alleged in this Complaint.

14. Venue is proper under 28 U.S.C. § 1391(c)(3), which provides that defendants not resident in the United States may be sued in any judicial district.

15. Venue is proper in the Atlanta Division of this District because that is where the Atlanta meeting occurred, where UnderSea is located, and to where Madero emailed documents to UnderSea.

16. UnderSea and Madero Holding entered into a Memorandum of Agreement dated February 8, 2013 ("MOA"), signed by Defendants, which provided for venue in the State of Georgia.

17. Defendants may be served outside any judicial district of the United States by any internationally agreed means of service reasonably calculated to give notice, including those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, or by such other means as the Court may order under Federal Rule of Civil Procedure 4(f)(3).

## II. FACTUAL ALLEGATIONS

18. UnderSea was introduced to Madero and Tejeda by Oil Services Network Mex in connection with a shipwreck exploration and recovery project in Jamaica (the "Project").

19. On or about January 4, 2013, Madero, as President and Chief Executive Officer of Madero Holding, transmitted an alleged proof of funds offer describing a Bolivarian Republic of Venezuela Sovereign Bond with a face value of USD 500 million, represented as registered and verified through

Euroclear, "free and clear," and registered with JP Morgan Chase, New York.

20. In January 2013, Tejeda, acting on behalf of Madero and Madero Holding, met with UnderSea in Atlanta, Georgia. Herbert Leeming, Tejeda, and others met at The Ritz Hotel in downtown Atlanta and then at Chops Restaurant in Buckhead, Atlanta, to discuss investment in UnderSea.

21. On January 14, 2013, Tejeda, acting on behalf of Madero and Madero Holding, met with UnderSea in Atlanta, Georgia (the "January 14 Meeting"). Attendees at the January 14, 2013 Meeting were Eric Jonsson, Erik Tamayo, Jacqueline Salz, Tejeda (collectively "the Mexico-based attendees"), Herbert Leeming, Steven Cunningham, Sylvia Ashley, Kenneth Vrana, Bruce Glenn, and James Larsen. The January 14 Meeting was held at The Regus Center at 260 Peachtree Street, Suite 2200, Atlanta, Georgia 30303. The purpose of the January 14, 2023 Meeting was to discuss investment in UnderSea by the Mexican-based attendees.

22. Madero Holding was represented at the January 14, 2013 Atlanta due-diligence meeting by Defendant Tejeda alongside Erik Tamayo and Jackie Salz-Becker of the Tamayo Group and Eric Jonsson of Oil Services Network Mex.

23. Tejeda attended and participated in due diligence and discussions concerning the investment on Madero Holding's behalf. Following the Atlanta meetings, Tejeda sent a communication into Georgia to UnderSea's principal, thanking

him for his hospitality and expressing that he looked forward to starting the Project.

24. In the MOA, Madero Holding agreed to transfer to UnderSea the sovereign, USD-denominated REGS fixed-rate global bonds issued by, and constituting an obligation of, the Bolivarian Republic of Venezuela, ISIN USP97475AP55, CUSIP P97475AP5, Common Code 045730476, bearing an 8.25% coupon and maturing October 13, 2024 (the "Bonds"), in a contracted face amount of US $10,000,000 to be drawn from the Bonds (the "Delivery Obligation").

25. The Banco Central de Venezuela acted as the issuing and registering bank for the Bonds and was not the obligor on them.

26. Madero Holding undertook the Delivery Obligation in exchange for an interest in Pedro Bank Shipwreck Exploration and Excavation, LLC ("Pedro" or "Pedro Bank LLC") and a warrant for 17% of UnderSea's common stock.

27. The parties signed an operating agreement for Pedro on February 8, 2013 (the "Operating Agreement"), UnderSea issued Madero Holding a warrant for the right to purchase 17% of its common stock (the "Stock Purchase Warrant"), and UnderSea supplied confidential information about the Project. The Stock Purchase Warrant provides that it is governed by the laws of the State of Georgia.

28. To serve as Exhibit C to the MOA, Madero provided UnderSea a 26-page document claiming to show proof of ownership over the Bonds.

29. Madero executed the MOA on behalf of Madero Holding as its President. Tejeda also signed the MOA.

30. Madero, directly and through his agent Tejeda, dealt with UnderSea in connection with the MOA.

31. Before the parties executed the MOA, Madero caused documents to be sent to UnderSea in Georgia representing that Madero Holding already owned a position in the Bonds sufficient to fund the Delivery Obligation (the "Claimed Position"). Those materials included Euroclear securities records naming Madero Holding as beneficiary and reciting a quantity of 500,000 bonds and a total issue amount of USD 2,495,963,000 under ISIN USP97475AP55, CUSIP P97475AP5, and Common Code 045730476, issued October 13, 2009 and maturing October 13, 2024, together with a Banco Central de Venezuela certificate of ownership and an affidavit signed by Armando León Rojas, Treasury Manager, dated December 14, 2012, attesting that the bonds were "good, clean, of non-criminal origin, of legal source."

32. Madero's representation that his company Madero Holding owned the Claimed Position was material to UnderSea's decision to enter into the MOA and to perform.

33. Tejeda also represented at the January 2013 meeting that Madero Holding owned the Claimed Position. His representation was material to UnderSea's decision to enter into the MOA and to perform.

34. UnderSea understood Madero's representation to mean that Madero Holding already held an interest in the Bonds from which the Delivery Obligation could be drawn and transferred free of encumbrance.

35. UnderSea would not have executed the MOA, issued the Stock Purchase Warrant, conveyed an interest in Pedro, or supplied confidential Project information had it known the truth that Madero Holding held no interest in the Bonds.

36. On February 27, 2013, Madero personally wrote to UnderSea's principal Herbert Leeming stating: "I am getting a $10,000,000 USD face value bond just for the transaction that I signed with you, this will happen between this coming Friday (March 1) and next Friday (March 8) . . . ."

37. Madero's February 27, 2013 statement did not disclose that Madero Holding owned no position in the Bonds. Read in context, the statement appeared to refer to drawing a US $10,000,000 face amount from the larger existing bond position that Madero had represented Madero Holding held, and UnderSea understood it that way. Madero intended UnderSea to believe Madero had ownership in the Bonds, and he did not disclose Madero Holding's non-ownership.

38. UnderSea relied on Madero's February 27, 2013 representation by continuing to perform under the MOA.

39. On September 3, 2013, Madero wrote to Leeming stating that "my company Madero Holding S.A. de C.V. will deliver to the account of UnderSea Recovery Corporation by the end of this month, September, . . . either (i) the

sum of US $10 million or (ii) sovereign bonds issued by the Bolivarian Republic of Venezuela and currently owned by my company . . . ."

40. In that September 3 letter, Madero Holding again reaffirmed its commitment to pay $10,000,000 in cash or sovereign bonds by no later than September 30, 2013.

41. UnderSea relied on Madero's September 3, 2013 representation by continuing to perform and by using the funding-commitment letter in its dealings with the Government of Jamaica.

42. During due diligence and throughout the parties' dealings, Madero provided documents to UnderSea purporting to establish Madero Holding's ownership of the Claimed Position. These documents included screenshots purporting to be from the Euroclear securities database showing "Madero Holdings SA de CV" as the "Beneficiary" of $500,000,000 bonds with ISIN USP97475AP55, and a July 7, 2015 letter purporting to be from the Banco Central de Venezuela confirming issuance of a "Bono Global" with ISIN USP97475A55 [sic] to Madero Holding in the amount of $500,000,000.

43. Madero and Tejeda never satisfied the Delivery Obligation or tendered its cash equivalent.

44. On November 18, 2013, Madero sent to UnderSea an email from Banco Central de Venezuela from EUDOMAR TOVAR, Presidente, Oficina Casa Matriz, Banco Central de Venezuela. Madero forwarded the email to inform UnderSea that Banco Central de Venezuela is "ready, willing and able to issue and to delivery (sic) on Stand[by] Letter of Credit, SBLC in

accordance to the text herein provided." In Tovar's attachment, it said that Banco Central de Venezuela had issued an irrevocable, transferable, assignable standby letter of credit in the amount of $10,000,000 in favor of UnderSea. Despite Madero's representation that the letter of credit would issue, the Banco Central de Venezuela never issued that letter of credit. UnderSea relied on Madero's representations.

45. On November 10, 2016, UnderSea made written demand to satisfy the contractual obligations.

46. In his November 18, 2016 reply, Madero blamed the non-performance on an asserted inability to "segregate" a USD 500 million bond pending "monetization" by AVIS Global Energy.

47. On January 15, 2019, UnderSea filed a civil action against Madero Holding styled *UnderSea Recovery Corporation v. Madero Holding, S.A. de C.V.*, Civil Action No. 1:19-cv-00286, in the United States District Court for the Northern District of Georgia (the "Prior Action").

48. The Prior Action named as defendant Madero Holding, S.A. de C.V., a Mexican corporation with its principal place of business at Buffon No. 46, Piso 10, Colonia Anzures, C.P. 11590, Mexico D.F. In the Prior Action, UnderSea alleged that Madero Holding was an investment company that agreed to deliver bonds but never funded its obligations under the MOA, notwithstanding repeated assurances that it would do so.

49. The Prior Action asserted three counts: (1) breach of contract, seeking the principal sum of $10,000,000 for Madero Holding's failure to pay for the

Stock Purchase Warrant and its interest in Pedro; (2) prejudgment interest at the rate of one and one-half percent (1.5%) per month from the due date until paid, pursuant to O.C.G.A. § 7-4-16; and (3) attorney fees, alleging that Madero Holding acted in bad faith, was stubbornly litigious, and caused UnderSea unnecessary trouble and expense, pursuant to O.C.G.A. § 13-6-11.

50. Because Madero Holding's address was unknown and could not be discovered through reasonable efforts, the Court granted UnderSea's motion for service by publication pursuant to Federal Rule of Civil Procedure 4(f)(3). UnderSea served Madero Holding by publication in El Excelsior, a daily newspaper in Mexico City, on August 17, August 25, September 2, and September 10, 2020. Madero Holding did not appear or respond, and the Clerk entered default.

51. On June 3, 2021, the Court entered default judgment against Madero Holding in the Prior Action, awarding UnderSea $10,000,000 in damages on the breach of contract claim, $5,824,388.97 in pre-judgment interest, and $128,391.26 in attorneys' fees and expenses, and closed the case. That judgment remains unsatisfied.

52. At all relevant times before the Deutsche Bank Trust Company Americas records were produced, UnderSea believed that Madero Holding owned the Claimed Position.

53. Following the default judgment, UnderSea pursued judgment-enforcement discovery, including a Rule 45 subpoena to Deutsche Bank Trust Company Americas. Deutsche Bank Trust Company Americas serves as dealer

manager and principal payment agent for the Bonds identified by ISIN USP97475AP55, CUSIP P97475AP5, and Common Code 045730476—the instrument in which Madero represented that Madero Holding held the Claimed Position, and from which the Delivery Obligation was to be drawn.

54. Deutsche Bank Trust Company Americas produced records in response to the subpoena on September 27, 2022. The records Deutsche Bank Trust Company Americas produced reflect no holding, account, or position in the Bonds in the name of Madero Holding or Madero, whether as registered holder or otherwise.

55. Neither Madero nor Madero Holding ever owned the Claimed Position.

56. Madero's representations that Madero Holding already owned the Claimed Position were false when made.

57. Madero's representations that Madero Holding would transfer the Delivery Obligation or its cash equivalent to UnderSea were made either with knowledge that Madero Holding would not do so or with no present intention to perform.

58. When UnderSea filed the Prior Action in January 2019, Madero Holding could not be found at either of its known addresses. The Mexican Central Authority attempted service under the Hague Convention at Buffon No. 46, Piso 10, Colonia Anzures, Mexico City, and at Hangars 1, 2, and 6 at Mexico City International Airport. At the first address, the process server was informed that Madero Holding had vacated approximately four years

earlier. At the second address, Madero Holding was not present; another entity occupied the premises.

59. Prior to this lawsuit, UnderSea sent demand letters to Madero Holding on November 10, 2016, and January 5, 2017, demanding that Madero Holding honor its obligation to pay $10,000,000. In a November 18, 2016 letter, Madero acknowledged the debt and represented that Madero Holding would pay once AVIS Global Energy completed a bond monetization. No payment was ever made.

60. Madero Holding never appeared or defended in the Prior Action, resulting in a default judgment against it on June 3, 2021. Despite the entry of judgment, Madero, who controlled Madero Holding, has never satisfied the judgment or made any payment toward it. Judgment-enforcement discovery revealed that the documentation Madero provided purporting to establish the Claimed Position, and provided to induce the MOA, was fabricated or falsified, demonstrating that Madero never intended to perform.

61. Tejeda, who attended the Atlanta due-diligence meeting, signed the MOA as a witness, and communicated with UnderSea on Madero Holding's behalf, participated in the fraudulent conduct that caused UnderSea to bring this action and incur the expenses of this litigation.

62. Madero and Tejeda have acted in bad faith, have been stubbornly litigious, and have caused UnderSea unnecessary trouble and expense.

## III. LEGAL CLAIMS AGAINST DEFENDANTS

### COUNT ONE
### FRAUD AGAINST DEFENDANT MADERO

63. UnderSea realleges and incorporates by reference the allegations in paragraphs 1 through 62 above as if fully set forth herein.

64. Madero, directly and through Tejeda, made false representations of material fact to UnderSea via email and through Tejeda personally. He also made multiple misrepresentations to the same effect (that Madero Holding owned the Bonds) via phone calls, voicemails, and other messaging services.

65. On January 4, 2013, Madero's proof-of-funds email described a US $500 million Venezuelan bond as registered and verified through Euroclear and "free and clear."

66. At the January 2013 Atlanta meetings, including the January 14, 2013 due-diligence meeting, Madero's representative (Tejeda) discussed the Bonds, representing that Madero Holding owned the Claimed Position.

67. On February 27, 2013, Madero emailed Herbert Leeming: "I am getting a $10,000,000 USD face value bond just for the transaction that I signed with you, this will happen between this coming Friday (March 1) and next Friday (March 8) . . . ."

68. On September 3, 2013, Madero promised in a funding-commitment letter to deliver by the end of that month either US $10,000,000 or a sovereign bond issued by the Bolivarian Republic of Venezuela that was fully negotiable and without liens.

69. On September 3, 2013, Madero Holding again promised to pay $10,000,000 in cash or sovereign bonds by September 30, 2013. Madero's representations concerned the sovereign, USD-denominated REGS fixed-rate global note identified by ISIN USP97475AP55, CUSIP P97475AP5, and Common Code 045730476, and were false because Madero Holding did not own a transferable, lien-free $10,000,000 portion of that issue and did not deliver it or the cash equivalent.

70. Madero made these representations with knowledge of their falsity or with reckless disregard for their truth and with the intent that UnderSea rely on them. UnderSea did rely on those representations to its detriment.

71. Deutsche Bank Trust Company Americas' records produced in response to UnderSea's judgment-enforcement subpoena establish that neither Madero Holding nor Madero appears in those records as the holder of any position in the Bonds, whether as registered holder or otherwise.

72. Madero made his representations about the ownership of the Bonds intending that UnderSea rely on them in performing its obligations and providing consideration under the transaction, including by executing the MOA, issuing the Stock Purchase Warrant, executing the Operating Agreement and conveying an interest in Pedro, and supplying confidential Project information while pursuing the Jamaican shipwreck-recovery license.

73. UnderSea did in fact and justifiably rely on Madero's representations by: (i) executing the MOA on February 8, 2013; (ii) issuing Madero Holding the

Stock Purchase Warrant for the right to purchase 17% of UnderSea's common stock, which provides that it is governed by Georgia law; (iii) executing the Operating Agreement for, and conveying an interest in, Pedro Bank LLC; and (iv) supplying confidential Project information and pursuing the Jamaican shipwreck-recovery license using Madero's September 3, 2013 funding-commitment letter, which authorized sharing the letter with the Government of Jamaica, the Prime Minister of Jamaica, and the Jamaican National Heritage Trust. UnderSea would not have taken these actions without the promised funding.

74. As a direct and proximate result of Madero's fraud, UnderSea lost the value of the consideration it conveyed and suffered additional consequential harm, measured at least by the June 3, 2021 default judgment against Madero Holding awarding $10,000,000 in damages, $5,824,388.97 in prejudgment interest, and $128,391.26 in fees and expenses. That judgment remains unsatisfied.

75. Madero's fraud was not discoverable until judgment-enforcement discovery. Deutsche Bank Trust Company Americas (the transfer agent for the Bonds) produced records in 2022, showing the non-ownership alleged above.

76. Madero's repeated acknowledgments of the debt, including his November 18, 2016 letter, and his assertion that the bond could not be segregated pending monetization by AVIS Global Energy concealed the non-ownership.

77. UnderSea justifiably relied on the representations made or adopted by Madero by executing the MOA, issuing the Stock Purchase Warrant,

conveying an interest in Pedro, and disclosing confidential Project information.

78. As a direct and proximate result of Madero's fraud, UnderSea has suffered damages in an amount to be determined at trial, including the value of the consideration it conveyed as set forth in Paragraph 73 above and additional consequential harm.

**COUNT TWO**
**FRAUD AGAINST DEFENDANT TEJEDA**

79. UnderSea realleges and incorporates by reference the allegations in paragraphs 1 through 62 above as if fully set forth herein.

80. Tejeda participated in and adopted Madero's false representations of material fact concerning Madero Holding's ownership of the Claimed Position in connection with his attendance at and participation in the Atlanta due-diligence meeting on Madero Holding's behalf, his communications with UnderSea, and his signature on the MOA as a witness.

81. On information and belief, Tejeda participated in and adopted the false representations with knowledge of their falsity or with reckless disregard for their truth. Tejeda attended the Atlanta due-diligence meeting at which the purported bond ownership documents were discussed. Tejeda signed the MOA, lending his endorsement to the transaction.

82. On information and belief, Tejeda participated in and adopted representations intended to induce UnderSea to enter into the MOA, to issue

the Stock Purchase Warrant, to convey an interest in Pedro, and to supply confidential Project information.

83. UnderSea justifiably relied on the representations made or adopted by Tejeda by executing the MOA, issuing the Stock Purchase Warrant, conveying an interest in Pedro, and disclosing confidential Project information.

84. Tejeda's fraud was not discoverable until judgment-enforcement discovery. Deutsche Bank Trust Company Americas (the transfer agent for the Bonds) produced records in 2022, showing the non-ownership alleged above.

85. As a direct and proximate result of Madero's fraud, UnderSea was damaged in an amount to be determined at trial but not less than the value of the consideration it conveyed and suffered additional consequential harm, measured at least by the June 3, 2021 default judgment against Madero Holding awarding $10,000,000 in damages, $5,824,388.97 in prejudgment interest, and $128,391.26 in fees and expenses.

**COUNT THREE**
**ATTORNEY'S FEES AGAINST DEFENDANTS MADERO AND TEJEDA**

86. UnderSea realleges and incorporates by reference the allegations in paragraphs 1 through 85 above as if fully set forth herein.

87. Under O.C.G.A. § 13-6-11, the expenses of litigation, including reasonable attorney fees, may be recovered when the defendant has acted in bad faith,

has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.

88. As set forth above, Madero and Tejeda have acted in bad faith, have been stubbornly litigious, and have caused UnderSea unnecessary trouble and expense by, among other things, making false representations to induce the MOA, failing to pay despite repeated demands and acknowledgments of the debt, abandoning known addresses to evade service of process, refusing to appear or defend in the Prior Action, and refusing to satisfy the judgment entered against Madero Holding.

89. UnderSea is entitled to recover from Defendants Madero and Tejeda all expenses of this litigation, including reasonable attorney fees, pursuant to O.C.G.A. § 13-6-11.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff UnderSea Recovery Corporation respectfully requests that the Court:

(a) enter judgment in favor of UnderSea and against Defendant Madero on Count One;

(b) enter judgment in favor of UnderSea and against Defendant Tejeda on Count Two;

(c) award UnderSea compensatory damages against Defendants Madero and Tejeda in an amount to be proven at trial, but not less than $10,000,000;

(d) award punitive damages against Defendants Madero and Tejeda as permitted by law;

(e) award pre-judgment and post-judgment interest against Defendants Madero and Tejeda as permitted by law;

(f) award UnderSea its expenses of litigation, including reasonable attorney fees, against Defendants Madero and Tejeda, under O.C.G.A. § 13-6-11 as pleaded in Count Three;

(g) grant such other and further relief against Defendants Madero and Tejeda as the Court deems just and proper.

**JURY DEMAND**

UnderSea demands a trial by jury on all issues so triable.

Respectfully submitted this 22nd day of September, 2026.

/s/ *Erika C. Birg*
Erika Birg
Georgia Bar No. 058140
NELSON MULLINS RILEY &
SCARBOROUGH LLP
201 17th Street NW
Suite 1700
Atlanta, Georgia 30363
email: erika.birg@nelsonmullins.com
phone: 404-322-6110

*Counsel for Plaintiff UnderSea Recovery Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNDERSEA RECOVERY CORPORATION, | ) | Civil Action No. ____________ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAMON AGUSTIN MADERO DAVILA, GALO HANS TEJEDA JOSEPH, | ) | |
| Defendants. | ) | |

VERIFICATION

I, Herbert Leeming, declare as follows:

1. I am the principal of Plaintiff UnderSea Recovery Corporation ("UnderSea"), the Plaintiff in the above-captioned action. I am over the age of eighteen, am competent to testify, and am authorized to make this Verification on behalf of UnderSea.

2. I make this Verification based upon my personal knowledge of the matters set forth in the foregoing Complaint and, as to those matters stated on information and belief, upon information obtained from the books, records, and files of UnderSea and from the investigation conducted in connection with this action, which I believe to be true.

3. I have read the foregoing Complaint and know the contents thereof. The factual allegations contained in the Complaint are true and correct to the best of my knowledge, information, and belief, except as to those matters alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22 day of September 2026.

Herbert C. Leeming

Herbert Leeming
Principal, UnderSea Recovery Corporation